UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| CAPEBUILT LAGOON RIDGE, LLC | ) |
| AND DUPUIS CONSTRUCTION, LLC , | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 24-12294 |
| | ) |
| RITZ-CRAFT CORPORATION | ) |
| of PENNSYLVANIA, INC., RITZ-CRAFT | ) |
| CORPORATION of MICHIGAN INC.,  and | ) |
| RITZ-CRAFT OF NORTH CAROLINA, INC., | ) |
| | ) |
|    Defendants. | ) |

_____

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned counsel, hereby bring this civil action against Defendants for damages and other relief arising from their sale and supply of defective and damaged products and materials resulting in Defendants' breaches of contract and express and implied warranties, negligence, unfair and deceptive business acts and practices, and other wrongful conduct by which Plaintiffs have been damaged.

## PARTIES

1.      Plaintiff, CapeBuilt Lagoon Ridge, LLC ("CapeBuilt LR"), is a Massachusetts limited liability company with a principal place of business located at 255 Main Street, Hyannis, Massachusetts.

2.      The managing member of CapeBuilt LR is CapeBuilt Partners, LLC.

3.      The two members of CapeBuilt Partners, LLC are CapeBuilt Development, LLC and Graham Withers, LLC.

4.      The managing member of CapeBuilt Development, LLC is Robert L. Brennan, Jr., an individual who is a citizen of and domiciled in the Commonwealth of Massachusetts.

5.      The managing member of Graham Withers, LLC is Ryan M. Roy, an individual who is a citizen of and domiciled in the Commonwealth of Massachusetts.

6.      Plaintiff, Dupuis Construction, LLC ("Dupuis"), is a Vermont limited liability company with a principal place of business located at 55 Marlboro Road, Suite 13, Brattleboro, Vermont.

7.      The two members of Dupuis are Scott Dupuis and Crystal Dupuis, each of whom holds a fifty percent (50%) membership interest in Dupuis Construction, LLC.

8.      Scott Dupuis is a citizen of and is domiciled in the State of Vermont.

9.      Crystal Dupuis is a citizen of and is domiciled in the State of Vermont.

10.     CapeBuilt Construction, LLC ("CapeBuilt Construction"), was a Massachusetts limited liability company with a principal place of business located at 255 Main Street, Hyannis, Massachusetts.

11.     The members of CapeBuilt Construction were Dupuis and CapeBuilt Partners.

12.     Defendant, Ritz-Craft Corporation of Pennsylvania, Inc. ("Ritz-Craft PA"), is a Pennsylvania corporation with a principal place of business located at 15 Industrial Park Road, Mifflinburg, Pennsylvania.

13.     Defendant, Ritz-Craft Corporation of Michigan, Inc. ("Ritz-Craft MI"), is a Pennsylvania corporation with a principal place of business located at 15 Industrial Park Road, Mifflinburg, Pennsylvania.

14.     Defendant, Ritz-Craft Corporation of North Carolina, Inc. ("Ritz-Craft NC"), is a Pennsylvania corporation with a principal place of business located at 15 Industrial Park Road, Mifflinburg, Pennsylvania.

## JURISDICTION AND VENUE

15.      Subject matter jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

16.     This Court has personal jurisdiction over Ritz-Craft PA as it is registered to do business in the Commonwealth of Massachusetts and conducts substantial business within the Commonwealth of Massachusetts and has significant contact with this District, including the activities that form the basis for this action.

17.     This Court has personal jurisdiction over Ritz-Craft MI as it conducts substantial business within the Commonwealth of Massachusetts and has significant contact with this District, including the activities that form the basis for this action.

18.     This Court has personal jurisdiction over Ritz-Craft NC as it conducts substantial business within the Commonwealth of Massachusetts and has significant contact with this District, including the activities that form the basis for this action.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

**The Lagoon Ridge Development and Relevant Parties**

20.     CapeBuilt LR is the owner of the Lagoon Ridge development located in Oak Bluffs, Martha's Vineyard.

21.     On July 22, 2021, CapeBuilt LR and CapeBuilt Construction entered into an AIA Standard Form Agreement pursuant to which CapeBuilt Construction would serve as the general contractor for the Lagoon Ridge development.

22.     Since on or about February 2021, CapeBuilt Construction and Dupuis had a purchasing agent arrangement, later memorialized by a Purchasing Agent Agreement, whereby Dupuis would serve as purchasing agent for CapeBuilt Construction with respect to the procurement of construction and building materials from certain manufacturers and vendors, including Ritz-Craft.

**Ritz-Craft Supplies Modular Boxes and Component Parts for Homes at Lagoon Ridge**

23.     On or about August 6, 2020, Dupuis, in its capacity as purchasing agent for CapeBuilt Construction, and Ritz-Craft[1] entered into a Builder Agreement having an effective date of August 5, 2020 (the "Builder Agreement"). Pursuant to the terms of the Builder Agreement, Ritz-Craft agreed to provide Dupuis and CapeBuilt LR with system-built modular home "boxes" and certain component parts (collectively, the "Modular Boxes") in connection with Plaintiffs' planned construction of four new homes for the Lagoon Ridge residential development on Martha's Vineyard.

24.     Ritz-Craft was to deliver the Modular Boxes to the Lagoon Ridge residential development in substantially completed form, including but not limited to all framing, rough electrical, rough plumbing, insulation, sub flooring, dry wall, interior doors, windows, cabinetry, sinks, toilets, showers, bathtubs, and other fixtures fully installed and inspected.  A typical two-story home was comprised of four Modular Boxes.

---

[1] Ritz-Craft PA, Ritz-Craft MI and Ritz-Craft NC are each parties to the Builder Agreement and are referred to collectively as "Ritz-Craft" for purposes of referencing the Builder Agreement's terms.

25.    Roof structures were to be delivered complete and substantially shingled. Once the Modular Boxes were secured on the respective foundations by a "set crew," the set crew would complete structural connections between the component "boxes" and roof components to complete a "weather tight" home and allow for additional onsite work to commence.

26.    At all relevant times, Ritz-Craft understood and was made fully aware that CapeBuilt LR was the direct beneficiary of the four new homes ordered under the Builder Agreement. Specifically, CapeBuilt LR representatives sought and received quotes and pricing direct from Ritz-Craft; discussed with Ritz-Craft modular home designs, floorplans and component parts; conveyed required specifications and timelines for production per lot; conveyed customer-specific design requests; and more.

27.    In addition, Ritz-Craft understood that CapeBuilt LR was providing the funding for the four new homes ordered under the Builder Agreement as CapeBuilt LR communicated directly with Ritz-Craft as to the stages of funding for Ritz-Craft's production per customer lot.

28.    The Builder Agreement provided a One-Year Limited Warranty, which specifically warranted all structural components and operational systems to be free from substantial defects in materials or workmanship.

29.    Beyond the One-Year Limited Warranty, the Builder Agreement explicitly disclaimed all other warranties, express or implied, including but not limited to all implied warranties of fitness, merchantability or habitability.

30.    Prior to leaving Ritz-Craft's facilities in Pennsylvania, the Modular Boxes were to have been securely sealed and wrapped in a "heavy mil" plastic with, importantly, each Modular Box's overhead section sufficiently "pitched" to ensure that no water or contaminants or other

foreign materials could "pool" and/or infiltrate any of the Modular Boxes at any time during transport to Martha's Vineyard, including during times of staging and storage.

31.     Pursuant to the Builder Agreement, Ritz-Craft was responsible for delivering the Modular Boxes to the Lagoon Ridge development site on Martha's Vineyard.

32.     The Modular Boxes were initially shipped from Ritz-Craft's headquarters in Pennsylvania to New Bedford, Massachusetts via truck.  They were then stored in New Bedford as they awaited transport to Martha's Vineyard via barge.

33.     In late August 2022, the Modular Boxes began to ship from New Bedford to the Lagoon Ridge development site.  The deliveries were staggered based on barge availability and were completed by mid-September 2022.

**Plaintiffs Become Aware of the Water Damage and Defects Within the Modular Boxes**

34.     On or about September 12, 2022, CapeBuilt Construction began unpacking the Modular Boxes to be set and assembled at the Lagoon Ridge development site.  At this juncture, it was revealed that the Modular Boxes had significant mold contamination throughout, including on the surfaces, insulation, sub-surfaces, sheathing and framing.

35.     Upon further inspection, not just one or a few, but *each and every* Modular Box (approximately fifteen (15) Modular Boxes in total) exhibited water infiltration and mold due to inadequate packing, plastic wrapping and failure to properly "tent" the overhead portions of each Modular Box.  Ritz's Craft's failure to properly "tent" the overhead sections of each Modular Box prevented the proper shedding of water, which directly led to water "pooling" in the overhead sections of each Modular Box and water then infiltrating each Modular Box – ultimately leading to the mold infestation.

36.     Certain Ritz-Craft employees, including Brad Swartz, Regional Sales Manager at Ritz-Craft ("Swartz"), acknowledged to Plaintiffs that the Modular Boxes were not packed, sealed, wrapped and overhead sections were not "pitched" properly before leaving Ritz-Craft's Pennsylvania facility for transport. When observing still-wrapped modular components on-site, Swartz identified the failure to properly "tent" and "pitch" the overhead portions of the individual modules as the cause of water pooling and infiltrating the individual modules and commented to CapeBuilt representatives, "we've had this happen before."

37.     To date, despite Plaintiffs' repeated demands, Ritz-Craft has failed and refused to fully compensate Plaintiffs for the time, expense, and other damages caused by the water infiltration and mold damage.

**Manufacturing, Design and Construction Defects in the Modular Boxes**

38.     Beyond the water and mold damage, there were numerous manufacturing, design and construction defects common to each of the Modular Boxes.

39.     The manufacturing, design and construction defects included, but were not limited to:

- Roof overlay dormers not fitting properly, resulting in "steps" in the roof at the ridge and fitment issues in general.

- Plywood roofs causing major issues with the rake boards requiring Plaintiffs to re-cut almost all of the rake overhangs.

- Missing joist hangers that were clearly required based on the construction type of the modular homes.

- Failure to meet basic construction standards and properly use nailers for sheetrock joints, resulting in excessive cracking to sheetrock.

- Doors that were poorly installed and unable to be adjusted, and many doors failing to fit within door frames properly.

- Interior doors that were not properly fastened and which contained only a few trim nails holding the doors in place.

- Poorly constructed and assembled kitchen components with large gaps in trim and crown moldings improperly nailed with fasteners that were too short and failed to penetrate the sheetrock. Kitchens were also specified to be made entirely from solid plywood but were instead constructed with particle board.

- Abnormal cracking throughout the Modular Boxes that indicated structural failures beyond normal cracking from transportation.

40.    Overall, the manufacturing, design and construction defects in the Modular Boxes exhibited construction quality well below industry standards and of particularly poor quality considering the price point of the homes planned for the Lagoon Ridge development, of which Ritz-Craft was aware, and the premium price paid by Plaintiffs to Ritz-Craft for the Modular Boxes.

**Ritz-Craft's Response to Being Informed of the Water Damage and Defects**

41.    On September 25, 2022, Scott Dupuis sent Swartz an email detailing the problems Plaintiffs had identified with the Modular Boxes and component parts, including the water and mold damage and the numerous manufacturing, design and construction defects.

42.    On September 29, 2022, Swartz visited the Lagoon Ridge development and acknowledged that the water and mold damage in the Modular Boxes was almost certainly caused by Ritz-Craft's failure to properly pack, wrap, "pitch" or "tent" the overhead sections of the

individual modules and/or seal the Modular Boxes prior to their leaving the Ritz-Craft facility in Pennsylvania.

43.     On October 11, 2022, following Swartz's visit to the Lagoon Ridge development, CapeBuilt LR sent a letter to Ritz-Craft providing further details regarding the issues with the Modular Boxes and the damage Plaintiffs had suffered as a result (the "October 11 Letter").

44.     The October 11 Letter also demanded that Ritz-Craft reimburse CapeBuilt LR for its remedial costs and other expenses associated with the Modular Box issues and to put its insurers on notice of CapeBuilt LR's claims.

45.     On November 2, 2022, CapeBuilt LR sent another letter to Ritz-Craft to, among other things, follow up on the October 11 Letter, inform Ritz-Craft of additional issues that had since been discovered, and reserve its rights with respect to damage claims related to the fourth set of Modular Boxes, which at that time had remained sealed in the manner shipped by Ritz-Craft.

46.     On November 18, 2022, following Ritz-Craft's failure to adequately respond to the October 11 Letter and provide its insurance information, Scott Dupuis emailed Swartz to request a meeting with Ritz-Craft ownership who, in turn, relayed the request asking ownership "to make it happen."

47.     Ritz-Craft failed and refused to agree to the meeting request or otherwise meet CapeBuilt LR's demands.

48.     On December 20, 2022, Zachary John, the General Manager for Ritz-Craft PA, sent a letter to Scott Dupuis which acknowledged some of the manufacturing, design and construction defects in the modular home boxes but claimed that the Modular Boxes were delivered to the Lagoon Ridge development site in "quality condition" and that any water damage was the responsibility of the builder.

9

**Plaintiffs Forced to Absorb Significant Damages**

49.     Following on-site inspection by a mold specialist, CapeBuilt LR was advised that the mold damage required each Modular Box be "taken down to the studs" before mold remediation work could be performed, after which the entire modular home would have to be rebuilt and product defects rectified.

50.     Plaintiffs were required to spend more than one million dollars ($1,000,000) on a time and materials basis for curing the product defects and remediating the mold and water damage before the completed modular homes could be in a condition suitable for sale and occupancy.

51.     Plaintiffs suffered significant additional damages including extensive carrying costs associated with the extraordinary delays inherent with the remediation, repairs and rebuilding.  In order to perform the extensive repairs, CapeBuilt LR had to secure additional financing and absorb debt service for protracted periods of time at significantly higher interest rates, which along with the extensive delays attributable to remediating mold and structural damage prevented CapeBuilt LR from building additional homes under contract.

52.     Further, two previously committed home buyers backed out of purchase and sale agreements due to the damage and associated delays and CapeBuilt LR was forced to settle with two other buyers (who were previously contracted to purchase completed modular homes) by selling them lots at heavily discounted prices because CapeBuilt LR could not deliver completed homes in accordance with either buyers' contract.

53.     In addition, Plaintiffs have suffered significant damage to their business reputations within the community.  In fact, the Lagoon Ridge development became locally known – including to real estate brokers and town officials – as "the mold project."  The Plaintiffs heard from brokers repeatedly that prospective buyers  had concerns about the mold damage and whether the structural

integrity of the homes had been compromised. The brokers' and prospective buyers' chatter was so excessive that Plaintiffs were forced to go out-of-pocket for buyer inspections and give price concessions at closing.

54.    In July 2024, CapeBuilt LR sold the last of the defective Ritz-Craft modular homes, but only after having completed the necessary repairs and remediation indicated above.

55.    Between construction-related repairs and remediation, and carrying costs, Plaintiffs have incurred more than two million seven hundred thousand dollars ($2,700,000) in damages to date.  In addition, CapeBuilt LR's damages are ongoing because it was forced to abandon its plan to sell additional completed modular homes at the Lagoon Ridge development.  As a result, CapeBuilt LR was forced to pivot and instead sell vacant lots, which negatively impacted sales velocity and therefore caused CapeBuilt LR to continue to incur the carrying costs associated with financing, insurance, taxes, and other expenses, including time and materials.

## COUNT I
### Breach of Contract

56.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

57.    On or about August 5, 2020, Dupuis and Ritz-Craft PA entered into a valid and binding contract.

58.    At all times relevant hereto, Dupuis performed its duties as required under the terms of the Builder Agreement including, but not limited to, making all required payments for the Modular Boxes and component parts.

59.    As part of their bargained-for-exchange, Ritz-Craft provided Dupuis with assurances that the Modular Boxes would be free from defect and suitable for the planned construction of homes at Lagoon Ridge.

60.     Pursuant to the above-stated conduct, Ritz-Craft is in breach of the contract, and is liable for the damages it has caused Dupuis to incur, plus interest, costs and reasonable attorneys' fees.

## COUNT II
### Breach of Contract – Express and Implied

61.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

62.     As detailed above, based on the contract language, course of dealing and surrounding circumstances, Ritz-Craft knew that CapeBuilt LR was a direct, third-party beneficiary of Dupuis under the Builder Agreement with Ritz-Craft.

63.     CapeBuilt LR relied on Ritz-Craft's representations and the parties' bargained-for-exchange.

64.     CapeBuilt LR provided the necessary funding required by the terms of the Builder Agreement and received direct assurances from Ritz-Craft that the Modular Boxes and component parts would be free from defect and suitable for the planned construction of homes at Lagoon Ridge.

65.     Pursuant to the above-stated conduct, Ritz-Craft is in breach of its contract and bargained-for-exchange with CapeBuilt LR, both express and implied, and is liable for the damages it has caused CapeBuilt LR to incur, plus interest, costs, and reasonable attorneys' fees.

## COUNT III
### Breach of Implied Covenant of Good Faith and Fair Dealing

66.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

67.     Every contract implies a covenant of good faith and fair dealing among the parties to the contract.

68.     The covenant of good faith and fair dealing requires that neither party shall do

anything that will have the effect of injuring the right of the other party to the fruits of the contract.

69.     As stated above, on or about August 5, 2020, Dupuis and Ritz-Craft PA entered into a contractual relationship by which Dupuis would purchase, and Ritz-Craft would supply, Modular Boxes for the Lagoon Ridge development.

70.     By the above-stated conduct, including Ritz-Craft's failure to acknowledge the cause of the water and mold damage in the Modular Boxes and to properly remedy the manufacturing, design and construction defects, Ritz-Craft breached the covenant of good faith and fair dealing and is liable to Plaintiffs for the damages it has caused them to incur, plus interest, costs, and reasonable attorneys' fees.

**COUNT IV**
**Breach of Express Warranty**

71.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

72.     Ritz-Craft expressly warranted that its Modular Boxes would be free from substantial defects in materials or workmanship.

73.     Ritz-Craft has breached this express warranty, as the Modular Boxes contained significant manufacturing, design, and construction defects, as described above.

74.     As a direct and proximate result of Ritz-Craft's breach of this express warranty, Plaintiffs have suffered, and continue to suffer damages in an amount to be determined at trial.

**COUNT V**
**Breach of the Implied Warranty of Merchantability**
**and Fitness for a Particular Purpose**

75.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

76.     Ritz-Craft sold the Modular Boxes at issue even though they were not merchantable and/or fit for the purpose for which they were intended to be used in violation of their implied warranties.

77.     While the Builder Agreement purports to disclaim and exclude all implied warranties of merchantability and fitness for a particular purpose, such disclaimers of implied warranties of merchantability and fitness in a sale of consumer goods are unenforceable under Massachusetts law pursuant to M.G.L. ch. 106 § 2-316A(2).

78.     Ritz-Craft's breaches of the implied warranty of merchantability and/or fitness for a particular purpose has caused damage to Plaintiffs in an amount to be proven at trial.

### COUNT VI
### Negligence

79.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

80.     Defendants owed a duty of care to Plaintiffs to provide Modular Boxes that would meet the applicable standard of care for residential home construction in the United States.

81.     Defendants' conduct, including but not limited to its failure to properly wrap, pack and seal the Modular Boxes prior to shipment and its failure to construct properly, and to identify construction defects in the Modular Boxes constitutes a breach of the standard of care owed by Defendants to Plaintiffs.

82.     Defendants represented themselves to Plaintiffs as experts in the field of designing and manufacturing Modular Boxes and other residential construction products.

83.     Defendants' conduct as alleged herein constitutes an extreme departure from the ordinary standard of care.

84.     As a direct and proximate result of Defendants' negligent conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

### COUNT VII
### Negligent Interference with Prospective Economic Relations

85.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

86.     At all times mentioned herein, an economic relationship existed between Plaintiffs and their clients and customers, including but not limited to local real estate professionals and actual and prospective purchasers of homes at the Lagoon Ridge development.

87.     As a result of the existence of these relationships between Plaintiffs and their clients and customers, there existed a reasonable probability of future economic benefit to Plaintiffs.

88.     Ritz-Craft was aware of Plaintiffs' existing business relationships as described herein, and further knew of the probability of future economic benefit to Plaintiffs arising from these relationships.

89.     Ritz-Craft knew or should have known that the conduct described above, including but not limited to its failure to properly wrap, pack, seal and inspect the Modular Boxes prior to shipment along with the design and manufacturing defects present in the Modular Boxes would harm the prospective economic relationships described above, but nevertheless Ritz-Craft negligently engaged in said conduct, interfering with and harming Plaintiffs' business reputations and relationships.

90.     As a direct and proximate result of Ritz-Craft's conduct described above, Plaintiffs have suffered damages in an amount to be proven at trial.

<u>COUNT VIII</u>
**Products Liability for Design Defect, Manufacturing Defect, and Failure to Warn**

91.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

92.     Defendants sold Plaintiffs its Modular Boxes and other building products for use in the ordinary course of business and intended for use in construction of residential homes being offered for sale by Plaintiffs.

93.     Ritz-Craft held itself out as an expert in the field of designing and manufacturing

modular homes and other residential construction products.

94.     At the time Ritz-Craft designed, manufactured, assembled, marketed, labeled, distributed, and sold the Modular Boxes into the stream of commerce, they were defective and presented an unreasonably dangerous condition as they violated building code specifications and could not pass inspection.  Ritz-Craft knew that the Modular Boxes were being sold without proper inspection for defects.

95.     Ritz-Craft failed to properly warn Plaintiffs of the product defects contained in the Modular Boxes.

96.     As a direct and proximate result of the defective products manufactured, sold, and/or supplied by Ritz-Craft, Plaintiffs have suffered significant damages in an amount to be proven at trial.

## COUNT IX
### Violations of Mass. Gen. Laws Chapter 93A

97.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

98.     At all relevant times, Ritz-Craft was engaged in the conduct of trade or commerce in Massachusetts.  Moreover, the unfair and deceptive acts and practices by Ritz-Craft occurred primarily and substantially in Massachusetts.

99.     As set forth above, Defendants failed to properly wrap, pack and seal the Modular Boxes prior to shipment and failed to identify the construction defects in the component parts.

100.    Ritz-Craft sold the Modular Boxes at issue even though they were not merchantable and/or fit for the purpose for which they were intended to be used in violation of their implied warranties.

101.    Defendants' actions described above, including but not limited to improperly

16

disclaiming all implied warranties in connection with Ritz-Craft's manufacture, sale, and supply of the Modular Boxes, and subsequent breaches of the implied warranty of merchantability and fitness for a particular purpose constitutes unfair and deceptive acts and practices prohibited under Mass. Gen. Laws Chapter 93A.

102.    Upon information and belief, Ritz-Craft engaged in the unfair and deceptive acts and practices described above as part of an ongoing effort to avoid liability and reimbursement to Plaintiffs for the defective and damaged Modular Boxes it had manufactured and sold.  Ritz-Craft knew, or should have known, that it could not enforce its disclaimer of the implied warranties of merchantability and fitness for a particular purpose in Massachusetts. Its disclaimer represents an unfair and deceptive tactic specifically designed to deceive its customers into thinking that they lack legal recourse and/or rights when faced with extraordinary product defects, as here.

103.    As a direct, proximate and foreseeable result of Ritz-Craft's unfair and deceptive acts and practices, Plaintiffs have suffered and continue to suffer cognizable harm.

104.    Ritz-Craft is liable to Plaintiffs for the damages Plaintiffs have incurred, and continue to incur,  on account of Ritz-Craft's unfair and deceptive acts and practices, plus a trebling of damages, together with interest, costs, and attorneys' fees.

**WHEREFORE**, the Plaintiffs, Dupuis Construction, LLC, CapeBuilt Lagoon Ridge, LLC,  respectfully request that this Honorable Court enter judgment in their favor and grant them the following relief:

1.    Pursuant to Counts I – VIII, judgment against the Defendants for the damages they have caused Plaintiffs to incur, plus interest, costs, and reasonable attorneys' fees;

2.      Pursuant to Count IX, judgment against the Defendants for treble the amount of damages they have caused Plaintiffs to incur, plus interest, costs and reasonable attorneys' fees; and

3.      Such other and further relief this Court deems necessary, just and equitable.

## **JURY DEMAND**

PLAINTIFFS HEREBY CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted,

**CAPEBUILT LAGOON RIDGE, LLC,
and DUPUIS CONSTRUCTION, LLC**

By their attorneys,

*/s/ Douglas B. Otto*
Douglas B. Otto (BBO No. 555269)
Michael P. Burke (BBO No. 682796)
Stacy W. Thomsen (BBO No. 706746)
DARROWEVERETT LLP
50 Congress Street, Suite 1040
Boston, MA 02109
dotto@darroweverett.com
mburke@darroweverett.com
sthomsen@darroweverett.com
t: 617-443-4500
f: 857-758-2948

Dated:  September 5, 2024

18