**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CAPEBUILT LAGOON RIDGE, LLC and DUPUIS CONSTRUCTION, LLC**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**RITZ-CRAFT CORPORATION OF PENNSYLVANIA, INC., et al.**<br><br>**Defendants.** | **Civil Action No. 24-12294-BEM** |

**MEMORANDUM AND ORDER ON**
**PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**MURPHY, J.**

This action arose out of the shipment of modular home units intended for use at a residential development on Martha's Vineyard. Plaintiffs CapeBuilt Lagoon Ridge, LLC ("CBLR") and Dupuis Construction, LLC ("Dupuis Construction") (together, "Plaintiffs") allege that Defendants Ritz-Craft Corporation of Pennsylvania, Inc., Ritz-Craft Corporation of Michigan, Inc., and Ritz-Craft of North Carolina, Inc. (collectively "Ritz-Craft") shipped modular home units to an incorrect location, and that the units sustained water and mold damage, as well as other construction defects, during the shipment. Plaintiffs brought claims for breach of contract (Counts I–II), breach of implied covenant of good faith and fair dealing (Count III), breach of express warranty (Count IV), breach of the implied warranty of merchantability and fitness for a particular purpose (Count V), negligence (Count VI), negligent interference with prospective economic relations (Count VII), products liability (Count VIII), and violations of Mass. Gen. Laws ch. 93A (Count IX). Ritz-Craft brought counterclaims for contribution and contractual indemnification

(Counterclaims I–II), and filed a third-party complaint against CapeBuilt Construction, LLC ("CBC").

Ritz-Craft moves for summary judgment on all but the breach of contract claims and express warranty claim in Plaintiffs' Complaint (Counts III, V–IX), and seeks to limit Plaintiffs' recoverable damages pursuant to a limitation of liability provision in a contract between the parties. Dupuis Construction cross-moved for partial summary judgment on their breach of contract claim for liability alone (Count I). For the reasons stated below, the Court will deny Dupuis Construction's motion for summary judgment, grant Ritz-Craft's motion for summary judgment, and limit Plaintiffs' recoverable damages pursuant to the limitation of liability agreement.

## I. <u>Background</u>

### A. <u>Factual Background</u>

#### 1. <u>The Builder's Contract Between Dupuis Construction and Ritz-Craft</u>

On August 6, 2020, Dupuis Construction and Ritz-Craft entered into an agreement pursuant to the Builder Policy and Procedure Manual (the "Builder's Contract"), which governs Dupuis Construction's procurement of modular home units from Ritz-Craft. Dkt. 63 ("Joint Statement of Material Facts" or "JSMF") ¶ 10; *see generally* Dkt. 46-5. The Builder's Contract includes a section referred to as the "Builder's Agreement,"[1] which specifies various payment, warranty, and delivery terms associated with Ritz-Craft's products. Dkt. 46-5 at 12–18. Scott Dupuis, the owner of Dupuis Construction, reviewed every page of the Builder's Contract, including the Builder's Agreement, made some modifications, and signed the agreement on behalf of Dupuis Construction. JSMF ¶¶ 11–12.

[1] The contract titles the relevant section "Builder Agreement," but Ritz-Craft refers to it as the "Builder's Agreement," Dkt. 44 at 2, and Dupuis Construction uses both terms, *compare* Dkt. 53 at 8, *with id.* at 2. For consistency, the Court uses "Builder's Agreement" here.

The parties dispute the scope of the provisions in the Builder's Contract related to choice of law, warranties, limited liability, and delivery requirements. *See* Dkt. 44 at 7–22; Dkt. 53 at 8–16. The Builder's Agreement states that it shall be "governed by, construed, and enforced in accordance with, the laws of Pennsylvania without regard to its principles of conflict of law. Except for matters related to building codes which shall be governed by the laws of Massachusetts." Dkt. 46-5 at 15; *see* JSMF ¶ 13. The Builder's Agreement also contains a provision entitled "Limited Warranty and Remedies," which contains the following language:

> RITZ-CRAFT'S WARRANTY TO THE BUILDER IS AS REFLECTED IN THE LIMITED WARRANTY ATTACHED TO THIS AGREEMENT. SUCH WARRANTY IS THE SOLE AND EXCLUSIVE REMEDY OF THE BUILDER. THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED AND EXCLUDED FROM THIS AGREEMENT. ANY AND ALL WARRANTIES MADE BY RITZ-CRAFT IN CONNECTION WITH ITS HOME AND/OR PRODUCTS ARE TERMINATED IMMEDIATELY IN THE EVENT THAT ITS HOME OR ANY OF ITS PRODUCTS ARE ALTERED OR MODIFIED WITHOUT THE EXPRESS WRITTEN CONSENT OF RITZ-CRAFT. BUILDER'S REMEDIES ARE LIMITED. BUILDER MAY NOT RECOVER ANY LOSS OF PROFITS, INDIRECT, SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF ANY BREACH OF WARRANTY OR CONTRACT. SUCH DAMAGES ARE EXCLUDED FROM THIS CONTRACT. RITZ-CRAFT'S MAXIMUM RESPONSIBILITY IN DAMAGES FOR ANY SALE IS LIMITED TO THE PRICE CHARGED FOR THAT SALE.

Dkt. 46-5 at 17; *see* JSMF ¶ 14.

The Builder's Contract contains a section entitled "Delivery Procedure," Dkt. 46-5 at 25–26. The parties characterize those procedures differently, and point to later correspondence in the record in support of their positions on where delivery was required to take place. *See* JSMF ¶¶ 41–42, 44, 47, 57–61. These disputes are central to the decision below. *See infra* Section III.A.

**2. The Purchasing Agreement Between CBC and Dupuis Construction and the Lagoon Ridge Development Contract Between CBLR and CapeBuilt Construction**

In February 2021, Dupuis Construction and CBC entered into their own contract (the "Purchasing Agreement"), in which Dupuis Construction agreed to contract with vendors as the agent of CBC. JSMF ¶¶ 4–5. Dupuis Construction agreed in the Purchasing Agreement "to assign any and all warranty claims associated with any and all purchases and/or contracts with Vendors" to CBC. *Id.* ¶ 6. The Purchasing Agreement noted that such vendors "include[d]" Ritz-Craft. *Id.* ¶ 7.

CBLR owns the Lagoon Ridge development, a residential subdivision on Martha's Vineyard. *Id.* ¶ 1. CBLR entered into a contract ("CBLR-CBC Contract") with CBC on July 22, 2021, under which CBC was named the general contractor for construction of the residential development. *Id.* ¶ 2.

**3. The Delivery of the Modular Home Units**

After receiving price estimates and conveying the required specifications, CBLR ordered four modular home units from Riz-Craft and paid a total of $1,661,521.02. *Id.* ¶¶ 18–19.[2] Ritz-Craft manufactured the modular home units in Pennsylvania between March and May 2022,[3] and Ritz-Trans, a subsidiary of Ritz-Craft,[4] transported the modular home units from Ritz-Craft in Pennsylvania to New Bedford, Massachusetts, which the parties refer to in briefing as the location

---

[2] Ryan Roy, a member and the current sole manager of CBLR, reviewed the Builder's Agreement prior to ordering modular home units from Ritz-Craft, and reviewed it again prior to or during construction. JSMF ¶¶ 16–17.

[3] The parties dispute the precise timing of manufacture between March and May 2022, and further dispute the precise timing of when the modular home units left the Pennsylvania facility, although both parties agree that the boxes left between July and August 2022. JSMF ¶¶ 20, 25.

[4] Ritz-Craft's statement of facts refers to Ritz-Trans Corporation of Michigan, Inc. as a wholly owned subsidiary of Ritz-Trans Corporation of Pennsylvania, Inc., JSMF ¶ 23, and in its briefing. Ritz-Craft refers to the "Ritz-Trans Corporation of Pennsylvania, Inc." as "Ritz-Craft's wholly owned subsidiary," Dkt. 44 at 4.

of "the barge site." *Id.* ¶¶ 20, 23; *see* Dkt. 54 at 2; Dkt. 60 at 7. Some of the boxes containing modular home units were staged at a truck stop on the border between New York and Massachusetts, awaiting Massachusetts State Police escorts for between a month and six weeks.[5] JSMF ¶ 27. Ritz-Craft made eighteen individual deliveries to New Bedford between July 5, 2022, and August 17, 2022. *Id.* ¶ 60. No one from CBLR, CBC, or Dupuis Construction received delivery of the modular home units in New Bedford, and none of them inspected any of the modular home units while they were in storage at New Bedford.[6] *Id.* ¶¶ 28–29. CBC and Dupuis Construction arranged for non-party transportation companies to transport the modular home units from New Bedford to Martha's Vineyard. *Id.* ¶¶ 30–31. When the boxes containing the modular home units were unwrapped and inspected on September 12, 2022 on Martha's Vinyard, Plaintiffs discovered that each of the units had sustained severe water and mold damage. *Id.* ¶ 33.

The parties dispute the maintenance steps taken to protect the modular home units during delivery and their condition upon delivery. Ritz-Craft claims that the units were wrapped in plastic transportation wrap that was maintained until drop-off, that Ritz-Craft regularly inspected the units to ensure they remained in good condition prior to shipment, and that water and mold damage was sustained because Plaintiffs failed to protect them while they were in storage at New Bedford or after arrival on Martha's Vineyard. *Id.* ¶¶ 22, 24, 26, 35–36. Plaintiffs contend that the "units were exposed to moisture and the outside elements while being stored at Ritz-Craft and during transport and storage before arriving at the building site," and that "[s]ome of the wrapping tore and came loose during transport requiring repair." *Id.* ¶ 34; *see id.* ¶ 21–22. In addition to water

---

[5] Ritz-Craft claims that the modular home units waited at the border for up to one month, while Plaintiffs claim that the modular home units were left unattended for approximately six weeks. JSMF ¶ 27.

[6] Ritz-Craft describes the location where the modular home units were delivered as "the docks in New Bedford," while Plaintiffs describe the location as "a commercial and industrial waterfront property storage location, not 'the docks.'" JSMF ¶ 23; *see id.* ¶ 26.

and mold damage, Plaintiffs claim that there were various construction defects in the modular home units, *id.* ¶ 37, and Ritz-Craft agrees that it has covered costs for some of these defects, *id.* ¶ 38.

**B. Procedural Background**

On September 5, 2024, Plaintiffs filed their Complaint alleging that Ritz-Craft breached their contract with Dupuis Construction (Count I), Dkt. 1 ("Complaint" or "Compl.") ¶¶ 56–60, and breached their contract with CBLR, a direct, third-party beneficiary of Dupuis Construction under the Builder's Agreement (Count II), *id.* ¶¶ 61–65. Plaintiffs also brought claims for breach of implied covenant of good faith and fair dealing (Count III), *id.* ¶¶ 66–70; breach of express warranty (Count IV), *id.* ¶¶ 71–74; breach of the implied warranty of merchantability and fitness for a particular purpose (Count V), *id.* ¶¶ 75–78; negligence (Count VI), *id.* ¶¶ 79–84; negligent interference with prospective economic relations (Count VII), *id.* ¶¶ 85–90; products liability for design defect, manufacturing defect, and failure to warn (Count VIII), *id.* ¶¶ 91–96; and violations of Mass. Gen. Laws ch. 93A (Count IX), *id.* ¶¶ 97–104. On October 28, 2024, Ritz-Craft brought counterclaims for contribution (Counterclaim I) and contractual indemnification (Counterclaim II) against Dupuis Construction in its answer to the Complaint. Dkt. 16 at 12–14. Ritz-Craft also filed a Third-Party Complaint against CBC alleging that CBC is liable to Ritz-Craft for contribution (Count I), if Ritz-Craft is found liable for negligence. Dkt. 17 at 2.

On July 27, 2026, Ritz-Craft filed a motion for partial summary judgment on all counts except for the breach of contract claims and the breach of express warranty claim—Counts III, V, VI, VII, VIII, and IX—as well as an "order that the plaintiffs' recovery under any theory of liability is limited to their special damages only and is capped at the price that the plaintiffs paid for each of the four (4) modular homes at issue, or a total of $1,661,521.02, whichever is lesser, pursuant to the limitation of liability provision in the parties' contract." Dkt. 43 at 1–2; *see* Dkt. 44. On

August 31, 2026, Plaintiffs filed an opposition to Ritz-Craft's motion for partial summary judgment, Dkts. 52–53, and Dupuis Construction separately filed a cross-motion for partial summary judgment on liability as to Count I of the Complaint, the breach of contract claim, Dkts. 52, 54.

## II. <u>Legal Standard</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis omitted). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Boston*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024). "Where, as here, the parties cross-move for summary

judgment, the court must examine each motion separately, drawing inferences against each movant in turn." *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (internal quotation marks and brackets omitted). "Since the issues raised by the cross-motions for summary judgment arise against the same legal backdrop, the discussion below will apply to both motions." *Del Gallo v. Parent*, 545 F. Supp. 2d 162, 173 (D. Mass. 2008).

## III. Discussion

Plaintiffs concede that Ritz-Craft is entitled to summary judgment on Plaintiffs' negligence claims in Counts VI and VIII because they are barred by the economic loss doctrine. Dkt. 53 at 2. The Court agrees. Therefore, the Court will grant summary judgment to Ritz-Craft on those claims, and resolve Dupuis Construction's motion for partial summary judgment on its breach of contract claim, before turning to Ritz-Craft's motion for partial summary judgment and then to its requested order limiting its liability.

### A. Count I: Breach of Contract

Dupuis Construction argues that it is entitled to summary judgment on the breach of contract claim because Ritz-Craft "breached an essential term by not delivering the units to the building site as required by the contract." Dkt. 54 at 2. It takes the position that the delivery procedure in the Builder's Contract required Ritz-Craft to deliver the modular home units to the building site located on Oak Bluffs, Martha's Vineyard, in substantially completed form, rather than to the barge site in New Bedford. *Id.* at 3–5. Dupuis Construction argues that failing to properly tender delivery constitutes a breach of an essential term of the contract. *Id.* at 10–12.

In opposition, Ritz-Craft disputes Dupuis Construction's interpretation of the Builder's Contract and argues that, even if the Builder's Contract originally imposed an obligation to deliver the modular home units to Martha's Vineyard, communications between the parties following their entry into the contract constituted a binding modification or waiver of the delivery obligation. Dkt.

60 at 10–15. Ritz-Craft also argues that Dupuis Construction should be estopped from enforcing its interpretation of the delivery obligation because it reasonably relied on Dupuis Construction and CBLR's representations that it could leave the modular home units at the barge site in New Bedford. *Id.* at 15–19.

To prevail on a breach of contract claim under Pennsylvania law, plaintiffs must establish a contract's existence, prove that a breach of duty occurred, and demonstrate that damages resulted from that breach.[7] *See McShea v. City of Philadelphia*, 606 Pa. 88, 97 (2010).[8] "'If the contract as a whole is susceptible to more than one reading, the fact finder resolves the matter,' but if 'it is unambiguous and can be interpreted only one way, the court interprets the contract as a matter of law.'" *Allied Erecting & Dismantling, Co. v. USX Corp.*, 249 F.3d 191, 201 (3d Cir. 2001) (quoting *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999)). To determine whether a breach occurred, the Court will first analyze the plain language of the contract, and then determine whether the relevant provisions were waived, modified, or estopped from being enforced.

On the page entitled "Delivery Procedure," the Builder's Contract repeatedly uses the phrase "building site" in referring to the delivery location. *See, e.g.*, Dkt. 46-5 at 25 ("Builder shall be responsible to have its representative meet the Ritz-Craft driver at a pre-determined location to direct the driver to the building site and to accept and pay for the home."). However, the Delivery Procedure also states that "[i]n the event site accessibility is not acceptable, the driver

[7] While Dupuis Construction and CBLR dispute the scope of the choice of law clause stating that the Builder's Agreement shall be "governed by, construed, and enforced in accordance with the laws of Pennsylvania" with respect to other claims, Dkt. 46-5 at 15; *see* Dkt. 44 at 8, Dupuis Construction and Ritz-Craft both analyze the contract's delivery obligation under Pennsylvania law when addressing the breach of contract claim, and the Court will follow suit.

[8] Dupuis Construction concedes that these elements are the same under the Pennsylvania Uniform Commercial Code ("UCC") as under Pennsylvania common law, so the Court will not address whether modular home units are "goods" governed by the Pennsylvania UCC. Dkt. 54 at 9.

shall not be required to deliver the home and the Builder shall be responsible for any additional charges for returning the home to Ritz-Craft and/or redelivering the home to the building site." *Id.* The delivery procedure section also states that "the Builder is responsible for rectifying any unsuitable conditions or for the acceptance of delivery and responsibility of the shipment at a mutually agreeable point nearest the originally intended drop point." *Id.* Ritz-Craft contends that the building site was inaccessible because the ocean separated it from the mainland. Dkt. 60 at 12. While Dupuis Construction argues that "there is no evidence in this case that the building site was somehow unsuitable or inaccessible," and that the contract never mentions the "notion that Ritz-Craft does not perform deliveries past the mainland," Dkt. 64 at 2, the language of the agreement is silent as to when "site accessibility" is "acceptable." Therefore, the contract's language does not resolve whether building site delivery was required in this instance.[9]

In light of the ambiguity on the face of the contract, the Court analyzes whether the extrinsic evidence resolves the ambiguity. *See Bark U, LLC v. Terwisscha Constr., Inc.*, 2026 WL 1676383, at *4 (E.D. Pa. June 9, 2026) ("Unless the extrinsic evidence is 'conclusive,' resolving the ambiguity is a task for the factfinder." (quoting *Tax Matrix Tech., LLC v. Wegmans Food Mkts*, 154 F. Supp. 3d 157, 173 (E.D. Pa. 2016))). Dupuis Construction argues that Ritz-Craft's salesman acknowledged that nothing in the Builder's Contract or the parties' correspondence identifies the barge site in New Bedford as being the building site for delivery, Dkt. 54 at 3–4, 10, a fact that is undisputed by Ritz-Craft, JSMF ¶ 43. Dupuis Construction also claims that the lack of delivery receipts signed by Dupuis Construction upon delivery, as well as the lack of inspection of the

[9] Dupuis Construction argues that Ritz-Craft's alternate delivery does not comply with the contract, because the only alternative delivery provision mentioned in the Builder's Contract mandates returning the home to Ritz-Craft because the site is inaccessible, or delivering to a mutually agreeable "point nearest the originally intended drop point," which Dupuis Construction claims could not have been New Bedford. Dkt. 64 at 3. To the extent that these arguments have merit, they are not dispositive because of the dispute of fact regarding whether there were any subsequent waivers or modifications to the contract that would permit the alternative delivery that Ritz-Craft made.

modular home units, is evidence that the delivery did not occur at the intended location, because those obligations would only have been triggered by proper delivery. Dkt. 54 at 11. In response, Ritz-Craft argues that Dupuis Construction paid for the delivery, a step "consistent with [completion of] delivery under the contract." Dkt. 60 at 11. Ritz-Craft also avers that it made eighteen individual deliveries to New Bedford on five discrete days, after which "[CBC] and Dupuis coordinated and paid for the remaining logistics through final delivery to the building site without giving any indication that they had originally expected Ritz-Craft to have handled it." Dkt. 60 at 14. Ritz-Craft's arguments regarding Dupuis Construction's payments and the multiple deliveries made create a dispute of fact as to the intent of the contracting parties. *See In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) ("A court always may consider the course of performance as evidence of the intent of the parties."). Because the extrinsic evidence is not conclusive, this conflict regarding whether adequate delivery occurred under the terms of the contract is unsuitable for resolution at summary judgment.

Were that not enough, the extrinsic evidence also presents a dispute of fact regarding whether there were any subsequent waivers or modifications to the contract. Ritz-Craft presents a series of emails between employees of CBC, Dupuis Construction, and Ritz-Craft including an exchange where CBC's general manager, Craig Sexton, asked whether Ritz-Craft's "shipping number" got the boxes to "New Bedford or further." Dkt. 66 at 4.[10] He later wrote, "[p]ricing confirmed to the barge as suspected." *Id.* at 6. A reasonable jury could understand numerous emails from Sexton to Ritz-Craft's representative, and from Ritz-Craft's representative to Sexton,

[10] Plaintiffs claim that the exhibit containing these communications is "a mix of communications over different timeframes and it does not represent a single complete communication." JSMF ¶ 59. They also note that "Plaintiffs inquired whether the shipping quote was to the barge in New Bedford 'or further,' meaning Martha's Vineyard, which they needed to know because under the Builder's Agreement, Dupuis was responsible for the costs incurred in delivering the homes." *Id.* ¶ 56. These explanations are pertinent to the intent ascribed and weight given to the communications, which the Court does not evaluate on summary judgment.

to contemplate that the modular home units would be delivered to the barge site. *See, e.g.*, *id*. at 11 (Sexton asking Ritz-Craft representative "when is the earliest that we could receive boxes to the barge in New Bedford factoring in construction and shipping?"); *id.* at 15 (Ritz-Craft representative asking Sexton and Scott Dupuis whether "the week of June 13th [will] work on Delivery to the Barge Site?"). On July 1, 2022, Sexton wrote to Ritz-Craft's representative: "We are now again having issues with the barge company. I'm not backing out on you though. Ship the first two and we will deal with it. I will get back to you on the other two next week." *Id.* at 40.

The Builder's Contract contains a no-modification clause which provides that "this agreement may not be amended, modified, or altered or any of its provisions waived except in writing and signed by an authorized officer(s) of both of the parties," Dkt. 46-5 at 15, and Ritz-Craft concedes that Sexton was not an officer of Dupuis Construction that could modify the contract, Dkt. 60 at 14. However, an attempted modification of the contract barred by the contract's no-modification clause may still constitute a waiver based on the "parties' subsequent course of dealings and performance." *Mitsubishi Corp. v Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378, 391 (W.D. Pa. 2006), *rev'd on other grounds*, 303 F. App'x 98 (3d Cir. 2008) ("Once a selective waiver has occurred, there is no barrier to the oral modification of the terms of the written contract that have been waived under either the contract or the Uniform Commercial Code."); *see Caring People All. v. Educ. Data Sys., Inc.*, 2008 WL 4441994, at *8 (E.D. Pa. Sept. 29, 2008) ("[C]ourse of performance between contracting parties can modify a contract between them despite a provision prohibiting non-written modification. It can do so if one party acts in a manner inconsistent with its rights under the contract by not exercising known contractual rights,

thereby misleading the other party into believing that the former has waived those rights, and thus prejudicing the latter party.").

Ritz-Craft argues that its eighteen deliveries to New Bedford on five discrete occasions, which occurred without Dupuis Construction or CBC expressing any objection, and after which Dupuis Construction and CBC paid for final delivery to the Martha's Vineyard building site, constitute a course of dealing or performance that waived any provision in the contract requiring delivery to the building site. Dkt. 60 at 14–15. In response, Dupuis Construction argues that "a course of performance under 13 Pa. C.S. § 1303(a) involves a sequence of conduct between parties to a particular transaction involving repeated occasions for performance." Dkt. 64 at 4–5 (emphasis omitted). Dupuis Construction frames "multiple deliveries over 5 separate dates" as "just one transaction." *Id.* at 5. Dupuis Construction also disputes that it expressed no objection to the deliveries "to the extent that CapeBuilt and Dupuis objected to the condition of the modular units once they finally arrived to Martha's Vineyard and were unwrapped." JSMF ¶ 60.

Under Pennsylvania law, "[a] 'course of performance' is a sequence of conduct between the parties to a particular transaction that exists if: (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection." 13 Pa. C.S. § 1303(a). Given the dispute here about whether Dupuis Construction had the requisite opportunity to object on repeated occasions, and acquiesced in Ritz-Craft's performance, this issue is inappropriate for resolution on summary judgment and left to the trier of fact.

The Court finds the delivery provision in the Builder's Agreement ambiguous. Furthermore, construing the record in the light most favorable to Ritz-Craft, the parties may have

waived that delivery provision, because Dupuis Construction may have accepted deliveries to the barge site in New Bedford through its communications and subsequent behavior. Dupuis Construction's motion for summary judgment on Count I is therefore denied.[11]

### B. Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing

With respect to the breach of the implied covenant of good faith and fair dealing claim, Ritz-Craft argues that a claim for breach of the implied covenant of good faith and fair dealing cannot be pled as a standalone claim when Plaintiffs have already pled breach of contract, as they have here. Dkt 44 at 8–9. Ritz-Craft argues that Pennsylvania law should govern the contract in light of the choice of law provision, which states that the Builder's Agreement "shall be governed by, construed, and enforced in accordance with, the laws of Pennsylvania without regard to its principles of conflict of law." Dkt. 46-5 at 15; *see* Dkt 44 at 8. Ritz-Craft argues that even if Massachusetts law governs, "there is no conflict between the laws of the subject jurisdictions" as it pertains to whether breach of the implied covenant of good faith and fair dealing can be pled as a standalone claim. Dkt. 44 at 8.

Plaintiffs agree that "Pennsylvania law governs the terms and enforceability of the Builder's Agreement" itself, but argue that it does not govern all contract-related claims arising out of the Builder's Agreement. Dkt. 53 at 8. Plaintiffs further argue that there are unresolved issues of fact that may demonstrate that it would be contrary to a fundamental public policy of Massachusetts to apply Pennsylvania law, because of Massachusetts's materially greater interest in the dispute. *Id.* at 9. In Plaintiffs' telling, the construction defects at issue may have involved building code violations, which are governed by Massachusetts law in the Builder's Agreement.

[11] For similar reasons, there is also a factual dispute regarding whether Dupuis Construction's "written representations, actions, and course of performance induced Ritz-Craft to rely on their acceptance of the modular boxes in New Bedford," Dkt. 60 at 15, which would allow Ritz-Craft to assert the affirmative defense of equitable estoppel.

*Id.* Further, Plaintiffs argue that the issues related to transportation delays and the timing of the modular home units getting wet could render their claim outside the Builder's Agreement's scope. *Id.*

The choice of law provision states that the Builder's Agreement "shall be governed by, construed, and enforced in accordance with, the laws of Pennsylvania." Dkt. 46-5 at 15. Under Massachusetts law, "the parties' choice of law should be upheld," unless "(1) 'the chosen [S]tate has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,' or (2) 'application of the law of the chosen [S]tate would be contrary to a fundamental policy of a [S]tate which has a materially greater interest.'" *Taylor v. E. Connection Operating, Inc.*, 465 Mass. 191, 196 (2013) (quoting Restatement (Second) of Conflict of Laws, § 187(2) (Am. Law Inst. 1971)). Here, Pennsylvania has a substantial relation to the contract at issue because Plaintiffs allege that it is the principal place of business of Ritz-Craft Corporation of Pennsylvania, Inc., Compl. ¶ 12, a party to the contract. Dkt. 46-5 at 12; *see Plante & Moran, PLLC v. Andover Healthcare, Inc.*, 2018 WL 935423, at *3 (D. Mass. Feb. 16, 2018) ("A 'substantial relationship' exists, however, between a corporation and the state in which its principal place of business is located."). Further, despite arguing that applying Pennsylvania law contravenes some fundamental public policy of Massachusetts, Plaintiffs do not specify what that public policy might be.[12] Moreover, "because 'a claim for a breach of that duty [of good faith and fair dealing] sounds in contract rather than in tort,' choice-of-law principles will as a rule dictate that 'the same substantive law that governs the contract claim also governs the implied covenant claim.'" *Amalgamated Titanium Int'l Corp. v. Mennie Mach. Co.*, 581 F. Supp. 3d 289, 302 (D.

[12] Plaintiffs' arguments that construction defects involving building code violations are governed by Massachusetts law under the Builder's Agreement does not alter this analysis, because Plaintiffs do not base their claim for breach of the covenant on good faith and fair dealing on building code violations.

Mass. 2022) (alteration in original) (quoting *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 10 (1st Cir. 1994)). Therefore, Pennsylvania law governs the contract claim as well as the implied covenant claim.

Under Pennsylvania law, a "claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008); *see McCabe v. Marywood Univ.,* 166 A.3d 1257, 1261 n.2 (Pa. Super Ct. 2017) ("Pennsylvania does not recognize an independent cause of action for breach of a covenant of good faith and fair dealing."); *MDR United, LLC v. Backporch Partners, Inc.*, 2026 WL 1658522, at *12 (E.D. Pa. June 5, 2026) (dismissing a claim for breach of implied covenant of good faith and fair dealing subsumed in a breach of contract claim, but allowing the breach of contract claim to move forward). Plaintiffs do not dispute that Ritz-Craft would prevail under Pennsylvania law, and only dispute that Pennsylvania law applies. *See* Dkt. 53 at 8–10. Therefore, applying Pennsylvania law, Ritz-Craft is entitled to summary judgment on the claim for breach of implied covenant of good faith and fair dealing.

While the Court could end the analysis here, it further notes for clarity that even if certain elements of Plaintiffs' claim for breach of the covenant fell outside the scope of the Builder's Agreement, and thus the choice of law provision, Massachusetts law would yield the same results. Under Massachusetts law, "[c]onceptually, claims for breach of the implied covenant of good faith and fair dealing are distinct from simple breach of contract claims," and require the plaintiff to "present evidence of bad faith or an absence of good faith." *Measurement Specialties, Inc. v. Exergen Corp.*, 2026 WL 2350119, at *8 (D. Mass. Aug. 12, 2026) (first quoting *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 229 (D. Mass. 2005), then quoting *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013)). "[R]ecovery under the implied covenant

'requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage.'" *Jennings v. Nathanson*, 404 F. Supp. 2d 380, 398 (D. Mass. 2005) (quoting *Christensen,* 360 F. Supp. 2d at 226). The record, considered in the light most favorable to Plaintiffs, contains arguments for breach of contract based on the allegedly extraordinary delay in delivery, and the extensive construction defects in the modular home units. However, it does not contain facts under which these breaches could be considered attempts to secure undue economic advantage. Under either Pennsylvania or Massachusetts law, the claim for breach of the implied covenant of good faith and fair dealing fails, and summary judgment is warranted as to Count III.

### C. Count V: Breach of the Implied Warranty of Merchantability and Fitness for a Particular Purpose

Ritz-Craft argues that the Court should grant summary judgment on Plaintiffs' implied warranty claim because Ritz-Craft disclaimed any implied warranties in the Builder's Agreement. Dkt. 44 at 9. The Builder's Agreement states: "Ritz-Craft's warranty to the builder is as reflected in the limited warranty attached to this agreement," and that "such warranty is the sole and exclusive remedy of the builder." Dkt. 46-5 at 17. The agreement also states, "there are no other warranties, expressed or implied, and the implied warranties of merchantability and fitness for a particular purpose are expressly disclaimed and excluded from this contract." *Id.*

Plaintiffs argue that this language is "in direct conflict with Massachusetts' strict limitation on disclaiming warranties," and argue that summary judgment should not be granted because there is a dispute of material fact regarding which state's law should apply. Dkt. 53 at 10–12. Plaintiffs misstate the law in Massachusetts. "Massachusetts law provides that 'a warranty of merchantability is implied in sale of goods by a merchant unless properly disclaimed,'" and disclaimer is valid when the language is "in writing, mention[s] merchantability, and [is]

conspicuous." *Patterson v. Bosch Marine LLC*, 744 F. Supp. 3d 142, 147 (D. Mass. 2024). The limitation on disclaiming warranties cited by Plaintiffs only applies to "consumer goods and services," *Shore v. Dorel Juv. Grp., Inc.*, 2026 WL 2056332, at *8 (D. Mass. July 16, 2026), which are "goods that are used or bought for use primarily for personal, family, or household purposes," Mass. Gen. Laws ch. 106, § 9-102(23). The modular home units at issue were not consumer goods, so there is no conflict between the laws of Pennsylvania and Massachusetts. "[T]he term 'consumer goods' has been held to include a variety of products installed as part of the structure of a home *when purchased by the consumer*," but this is not a case where a company purchased materials "on behalf of and under control of" a homeowner for household use, and instead involves "purchas[e] for use in a number of different homes to be built by a contractor." *W.R. Const. & Consulting Inc. v. Jeld-Wen, Inc.*, 2002 WL 31194870, at *9 (D. Mass. Sept. 20, 2002) (emphasis added). Because the disclaimer of implied warranties was in writing, conspicuous, and effective under either Pennsylvania or Massachusetts law, Ritz-Craft is entitled to summary judgment on Count V.

### D. Count VIII: Products Liability for Design Defect, Manufacturing Defect, and Failure to Warn

Ritz-Craft argues that it is entitled to summary judgment on Plaintiffs' products liability claim because the claim is either a tort-based negligence claim, which is barred by the economic loss doctrine, or a breach of implied warranty of merchantability claims, which is barred because of the disclaimer of warranties provision discussed *supra* Section III.C. Dkt. 44 at 21. Ritz-Craft claims that "products liability" is not a cause of action and that the relevant allegations in the Complaint "are sufficiently vague so that one could read them either as negligence claims or breach of warranty claims." *Id.* at 22. Plaintiffs argue that "Count VIII for Products Liability is Warranty-Based," and that the disclaimer provision limiting warranties is unenforceable in

Massachusetts, for substantially the same reasons as argued with respect to the claim for breach of implied warranty. Dkt. 53 at 15–16.

Once again, because the disclaimer of implied warranties was in writing, conspicuous, and effective under either Pennsylvania or Massachusetts law, Plaintiffs cannot prevail on a claim they concede is "warranty-based." Ritz-Craft is entitled to summary judgment on Count VIII.

**E. Count IX: Violations of Chapter 93A**

Ritz-Craft next moves for summary judgment on Plaintiffs' claim under Mass. Gen. Laws ch. 93A ("Chapter 93A"). Ritz-Craft argues that the choice of law provision in the Builder's Agreement precludes claims based on Chapter 93A because "[w]here a choice-of-law provision binds the 'rights and obligations' of the parties, Massachusetts statutory claims are barred outside of the chosen state's laws." Dkt. 44 at 15 (quoting *Callahan, Inc. v. Arch Specialty Inc. Co.*, 2026 WL 555602, at *6 (D. Mass. Feb. 27, 2026)). Ritz-Craft contends that the Chapter 93A claim is duplicative of the breach of contract and warranty claims. *Id.* at 11.

Plaintiffs argue that the choice of law provision is agreement-specific and does not reach non-contract claims, including the statutory claim under Chapter 93A. Dkt. 53 at 12–14. Further, they argue that their Chapter 93A claim is distinguishable from their contract claims, because "the 93A claim concerns marketplace conduct, product condition, inspection, disclosure, and Ritz-Craft's delivery practices, not simply an interpretation or enforcement of a contractual promise." *Id.* at 13.

The choice of law provision in the Builder's Agreement does not "include common contractual phrases, such as 'relating to,' 'arising under,' 'connected with,' or 'incident to,' which would suggest the provision applies to extra-contractual claims." *Nizhoni Health Sys. LLC v. Netsmart Techs., Inc.*, 2023 WL 3657386, at *8 (D. Mass. May 25, 2023). Therefore, the choice-of law provision does not necessarily preclude a Chapter 93A claim.

However, "[w]hile extra-contractual claims are not governed by the . . . choice-of-law provision," the Chapter 93A claims here "do fall within the provision's ambit, because they are "embroidered 'breach of contract' claims." *Id.* at *9. Though Plaintiffs claim that they "challenge[] Ritz-Craft's alleged unfair or deceptive conduct in selling, inspecting, wrapping, packing, sealing, and delivering modular boxes that Plaintiffs allege were defective and water-damaged in connection with a Massachusetts construction project," Dkt. 53 at 14, this simply restates the basis for their breach of contract claim, without any specific allegation of deceptive, bad-faith conduct. Plaintiffs do not cite any evidence to suggest "that the breaching party acted with an 'ulterior motive' or 'coercive or extortionate objective.'" *Skyview Fin. Co. v. Kearsarge Trading, LLC*, 616 F. Supp. 3d 152, 158 (D. Mass. 2022) (quoting *Framingham Auto Sales, Inc. v. Workers' Credit Union,* 671 N.E.2d 963, 965 (Mass. App. Ct. 1996)). "Breach of contract, without more, does not amount to a 93A violation," *id*. at 157, and "the mere fact 'that a party knowingly breached a contract does not raise the breach to the level of a Chapter 93A violation,'" *id.* at 157–58 (quoting *Ahern v. Scholz*, 85 F.3d 774, 798 (1st Cir. 1996)). Because Plaintiffs base their Chapter 93A claim on Ritz-Craft's purported breach of contract alone, Ritz-Craft is entitled to summary judgment as to Count IX.

**F. <u>Limitations on Plaintiffs' Recoverable Damages</u>**

Finally, Ritz-Craft requests that the Court enter an order limiting Plaintiffs' recoverable damages based on a limitation of liability provision in the Builder's Agreement. The provision provides:

> BUILDER'S REMEDIES ARE LIMITED. BUILDER MAY NOT RECOVER ANY LOSS OF PROFITS, INDIRECT, SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF ANY BREACH OF WARRANTY OR CONTRACT. SUCH DAMAGES ARE EXCLUDED FROM THIS CONTRACT. RITZ-CRAFT'S MAXIMUM RESPONSIBILITY IN DAMAGES FOR ANY SALE IS LIMITED TO THE PRICE CHARGED FOR THAT SALE.

Dkt. 46-5 at 17. Ritz-Craft argues that under Pennsylvania law, "[c]ontracting parties may limit or exclude consequential damages unless the limitation or exclusion is unconscionable." Dkt. 44 at 16 (citing 13 Pa. C.S.A. § 2719(c)).

In response, Plaintiffs argue that this language "limits remedies for contract and warranty breaches only, not remedies for independent statutory or extra-contractual wrongs." Dkt. 53 at 14. Under Plaintiffs' interpretation of the language, liability is only limited as to particular claims.

Given the Court's conclusions regarding the products liability and Chapter 93A claims, and Plaintiffs' concession regarding the negligence claims, the Court need not address Plaintiffs' argument regarding the scope of the language, because no statutory or extra-contractual claims remain in this lawsuit. The only claims left are the breach of contract claims, and the express warranty claim, which the limitation of liability provision squarely covers.[13] Therefore, the Court will order that Plaintiffs "may only recover their special damages, and the amount of recover[y] is capped at the price that [was] paid for . . . each of the four (4) modular homes at issue, or a total of $1,661,521.02, whichever is lesser, under any theory of liability." Dkt. 43 at 3.

## IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is GRANTED. Dupuis Construction's motion for partial summary judgment is DENIED. It is ORDERED that Plaintiffs may only recover their special damages, and the amount of recovery is capped at the

---

[13] Plaintiffs also argue that there is a dispute regarding whether "CBLR is bound by a Builder-specific limitation in an agreement it did not sign." Dkt. 53 at 15. "However, the Pennsylvania Supreme Court has 'historically . . . held that third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract.'" *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 708 n.4 (E.D. Pa. 2014) (quoting *Johnson v. Pa. Nat. Ins. Cos.,* 527 Pa. 504, 594 (1991)).

price that Plaintiffs paid for each of the four modular homes at issue, or a total of $1,661,521.02, whichever is lesser, under any theory of liability.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: November 24, 2026